SHORES, Justice.
This case concerns whether the Huntsville-Madison County Airport Authority (“Airport Authority") was authorized to enact Resolution FY 90-333, which regulates off-site concessionaires and charges them an access fee. The trial court entered a summary judgment for the Airport Authority; the rental car company, Enterprise Management, Inc., appeals. We affirm.
On November 29, 1989, the Authority passed Resolution FY 90-333, which required off-site concessionaires to submit proof of comprehensive general liability insurance, proof of financial responsibility, and proof of business and motor vehicle permits, and required them to pay the Airport Authority a fee of 10% of the annual gross revenues they derive from their operations at Huntsville International Airport. The original effective date of the resolution was January 1, 1990, but this date was extended to July 1, 1990, to give off-site companies an opportunity to move onto airport property.
Enterprise Management, d/b/a Thrifty Car Rental, filed a complaint on January 4, 1990, claiming unlawful interference by the Airport Authority with Enterprise’s right to use Glenn Hearn Boulevard, and seeking compensatory and punitive damages against the Airport Authority. The Airport Authority counterclaimed to recover a judgment against Enterprise for sums owed to the Airport Authority pursuant to the resolution, and for an injunction prohibiting Enterprise from violating the resolution.
Both Enterprise and the Airport Authority filed motions for summary judgment. On January 7, 1991, the trial judge entered a summary judgment in favor of the Airport Authority on Enterprise’s complaint and upon the liability issue raised by the counterclaim, and denied Enterprise’s motion for a summary judgment.[1] The trial judge’s order stated that the case was to remain pending for the determination of the relief due to the Airport Authority.
On June 24, 1991, Enterprise and the Airport Authority signed a stipulation of fact, in which they agreed that Enterprise would owe the Authority the sum of $36,-161 if Resolution FY 90-333 was found to be legally enforceable. The trial court, on September 10, 1991, entered a summary judgment for the Airport Authority, assessing the stipulated damages in the amount of $36,161 and enjoining Enterprise from further business operations at the Huntsville International Airport that violate the rules and regulations of Resolution FY 90-333. Enterprise appeals from this judgment.
We first consider whether the trial court erred in entering a summary judgment for the Airport Authority. Rule 56, A.R.Civ.P., sets forth a two-tiered standard *899 for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc., 475 So.2d 539, 541 (Ala.1985); Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala.1981). Rule 56 is read in conjunction with the “substantial evidence rule” (§ 12-21-12, Code 1975), for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must present “substantial evidence,” i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
The trial court found that there was no genuine issue of material fact, because it held that the Airport Authority was authorized to enact Resolution FY 90-333. Act No. 385, 1973 Ala. Acts, Regular Session,[2] grants the Airport Authority certain enumerated powers in conjunction with its authority to operate and manage the Huntsville International Airport. These powers include, in part, the following:
“Section 7. Powers of the Authority — In General. The authority shall have the following powers together with all powers incidental thereto or necessary to the discharge thereof in corporate form: ... (6) execute contracts and other instruments and to take such other action as may be necessary or convenient to carry out the purposes of this act or the exercise of any authority or power granted hereunder; (7) to establish, develop, acquire, construct, enlarge, improve, maintain, equip, operate, regulate and protect airports ... within the county, including the ... maintenance and operation at such airports of buildings and other facilities for the ... comfort and accommodation of air travelers and the purchase and sale of supplies, goods, and commodities as are incident to the operation of its airport properties; (8) to construct, acquire, establish, improve, extend, enlarge, reconstruct, equip, maintain, repair and operate heliports, aerial aircraft ..., landing, loading or storage areas and transportation terminals; ... (10) to furnish or supply upon any airport owned or operated by ... the authority, to persons for reward or compensation ... services convenient or useful to the ... persons upon said airport, ... including, without limiting the generality of the foregoing, food, lodging, shelter, lawful drinks, confections, reading matter, oil, gasoline, motors and aircraft, motor and aircraft parts and equipment, space in buildings, space for buildings and structures, and the. services of mechanics, instructors and hostlers; (11) to confer upon individuals, firms, corporations or companies for ... compensation the privilege or concession of supplying upon any airport, owned or operated by or under the jurisdiction of the authority, all or any part of the ... services and facilities in clause (10) of this section authorized to be supplied; ... (16) to make and enter into contracts, leases and agreements incidental to or necessary for the accomplishment of any purpose or purposes for which the authority was organized; ... (19) to fix, establish, collect and alter landing fees, tolls, rents and other charges for the use of any airport, heliport, landing area, building, structure, facility or other property owned or controlled by the authority; (20) to make and enforce rules and regulations governing the use of any airport, heliport, landing area or airport facility owned or controlled by the authority.”
Act No. 385, 1973 Regular Session, amending Act No. 780, 1961 Regular Session.
*900 Thus the question before us is whether the legislation governing the Airport Authority gives it the power to pass Resolution FY 90-333, which imposes an access or user fee upon an off-site rental car company.
Although this is a case of first impression in Alabama, the question has been examined by the federal courts, which have upheld the legitimacy of gross receipts access fees on rental car companies. Toye Bros. Yellow Cab Co. v. Irby, 437 F.2d 806 (5th Cir.1981); Allright Colorado, Inc. v. City & County of Denver, 937 F.2d 1502 (10th Cir.), cert. denied, — U.S. — , 112 S.Ct. 587, 116 L.Ed.2d 612 (1991); Alamo Rent-a-Car, Inc. v. Sarasota-Manatee Airport Authority, 825 F.2d 367 (11th Cir.1987), cert. denied, 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed 2d 987 (1988), appeal after remand, 906 F.2d 516 (11th Cir.1990). These cases are based upon the United States Supreme Court’s ruling in Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc., 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972), which held a passenger user fee to be constitutional. The Court said that a charge designed only to make the user pay a reasonable fee to help defray the costs of a state-provided facility may be constitutionally imposed on interstate and domestic users alike.
Enterprise does not question the constitutionality of the Airport Authority’s actions, but contends that the access fee is nevertheless not lawful, because, Enterprise says, it regulates Enterprise’s use of Glenn Hearn Boulevard, which, it contends, is a public roadway.
Enterprise relies on the holding of this Court in Epps Aircraft, Inc. v. Montgomery Airport Authority, 570 So.2d 625 (Ala.1990). This reliance is misplaced, because that case involved a fact situation in which a contract already existed between the Airport Authority and the company before the resolution was passed.
In Epps Aircraft, a primary lease was in existence between the Montgomery Airport Authority and the Exxon Corporation. Exxon subleased its airport facilities to Epps Aircraft, which purchased a rental car franchise and began to operate from its facilities. The Montgomery Airport Authority then adopted a resolution imposing a percentage fee on all off-site rental car companies. This Court refused to enforce against Epps Aircraft the fee that was created by the resolution, on the grounds that it interfered with Epps’s contractual rights. Id. at 628. This Court further noted that the Montgomery Airport Authority lacked the power to charge a fee for, and thus impede, the use of public roads, by virtue of the reservation in the deeds. Id. at 630.
The Airport Authority counters with the argument that the access fee is not tied to the use of airport roads, but rather is assessed for the privilege of supplying services at the Huntsville International Airport. The case of Airline Car Rental, Inc. v. Shreveport International Airport, 667 F.Supp. 303 (W.D.La.1987), is factually similar to this case. In that case, the car rental company attacked a resolution imposing a 7% fee on the gross revenues of off-site rental car companies. The federal District Court for the Western District of Louisiana dismissed the attack on the resolution as being in violation of the Commerce and Equal Protection Clauses of the U.S. Constitution. Id. at 309, 314. Further, the court rejected the rental company’s argument that it was not lawfully adopted because it regulated the use of a public roadway, which is the argument made by Enterprise here. Id. at 310. The court held that the powers given in the enabling clause were broad enough to give the airport authority the power to regulate roads servicing the airport, and, therefore, that the resolution was proper.
The Airport Authority has been given the power to enact resolutions allowing it to effectively manage and operate the airport. The broad enabling powers given the Airport Authority should be liberally interpreted to allow it to fulfill its purposes of managing and operating the Huntsville International Airport. Resolution FY 90-333 not only establishes an access fee that provides revenue; it also ensures greater pub- *901 lie safety by requiring off-site rental car companies to meet specific standards regarding insurance, financial responsibility, and adherence to local, state, and federal laws. This is a legitimate and substantial governmental objective. Under the powers given the Airport Authority by the Alabama Legislature, the Airport Authority had the power to adopt the challenged resolution.
Accordingly, the Airport Authority’s summary judgment, with the award of the stipulated damages in favor of the Airport Authority, is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., dissents.

. Enterprise's motion for a summary judgment was denied on the grounds that the access fee is unrelated to the use of airport roads.

. Amending Act No. 870 of the 1961 Regular Session.